IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARLA ANN TALKINGTON
and LOUIS GARY DAVIS,

       Plaintiffs,

v.                                  Civil Action No. 1:17CV172
                                             (STAMP)

MICHAEL RENZELLI,
MARY LOU RENZELLI,
OLIVERIO'S CATERING, INC.
and SHIRLEY C. OLIVERIO,
in her capacity as a
personal guarantor of
Oliverio's Catering, Inc.,

       Defendants.


**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT SHIRLEY C. OLIVERIO'S
MOTION FOR SUMMARY JUDGMENT,
GRANTING AS FRAMED PLAINTIFFS' AND CROSS-CLAIMANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE
CONTRACT CLAIMS PENDING AGAINST THE OLIVERIO'S DEFENDANTS
AND AS TO THE PLAINTIFFS' REQUEST FOR DECLARATORY RELIEF,
DENYING DEFENDANTS' MOTION FOR JURY TRIAL,
SCHEDULING REASONABLENESS HEARING AS TO ATTORNEYS' FEES
AND BRIEFING REGARDING ATTORNEYS' FEES,
DIRECTING PARTIES TO MEET AND CONFER
CONCERNING THE AMOUNT OF TOTAL DAMAGES
AND VACATING PRETRIAL CONFERENCE AND TRIAL**


I.  Background

     The plaintiffs, Marla Ann Talkington and Louis Gary Davis

("the plaintiffs"), filed an amended complaint in this Court

against the defendants, Michael Renzelli, Mary Lou Renzelli ("the

Renzelli defendants"), Oliverio's Catering, Inc., and Shirley C.

Oliverio ("the Oliverio's defendants").  The plaintiffs seek to

require the partition by sale of parcels in Harrison County, West

Virginia, pursuant to West Virginia Code § 37-4-1, et seq.  The

plaintiffs seek to have the subject parcels sold at judicial sale to the highest bidder by a Special Commissioner appointed by this Court. The plaintiffs collectively own 50% of the parcels and the Renzelli defendants own the other 50% of the parcels, as tenants in common with the plaintiffs. The plaintiffs' first cause of action in their amended complaint is this action for partition.

The remaining causes of action relate to the Oliverio's defendants. In 1996, before the plaintiffs acquired their interests in the subject parcels, Mary Roda Renzelli and Helen Roda Davis entered into a lease agreement ("Lease Agreement") with Oliverio's for one of the subject parcels. In 2007, the parties executed an amendment to the Lease Agreement ("Amendment"), that dealt with changes to the subject property, specifically including a portion of the building housing the restaurant which was formerly occupied by Louis Roda and Mary Roda as their residence (see ECF No. 70-2 at 1-4). From 2006 through 2016, Oliverio's failed to make their rent payments in full, and substantial payments remain outstanding. Plaintiffs' second cause of action is for breach of contract. Specifically, plaintiffs allege that Oliverio's has breached the Lease Agreement by failing to pay rent, fees, expenses, and interests. The plaintiffs' third cause of action is for unjust enrichment, in which the plaintiffs allege that they are entitled to recover a reasonable rental value from Oliverio's, plus interest and other expenses. Plaintiffs' fourth cause of action seeks a declaratory judgment, declaring that Oliverio's right of

first refusal contained within the lease agreement is invalid and unenforceable, and that Oliverio's materially and intentionally breached the Lease Agreement.

A. <u>Defendant Shirley C. Oliverio's Motion for Summary Judgment</u>

On February 25, 2019, the defendant, Shirley Oliverio, filed a motion for summary judgment. ECF No. 72. In support of her motion, she contends that the Lease Agreement stated that she would guarantee all obligations and duties under the Lease Agreement for the initial term only. <u>Id.</u> at 2. She asserts that the 2007 Amendment to the Lease Agreement did not change the term of the guaranty, and that there was no new consideration exchanged for any additional term. <u>Id.</u> Moreover, defendant Shirley Oliverio claims that there has never been any independent oral agreement to assume a greater period beyond the initial term. <u>Id.</u>

The plaintiffs and the Renzelli defendants filed a response to defendant Shirley Oliverio's motion for summary judgment. ECF No. 74. In that response, the plaintiffs and cross-claimants contend that the plain language of the Amendment to the Lease Agreement is without restriction, and that the Amendment to the Lease Agreement modified the underlying Lease Agreement and now controls. <u>Id.</u> at 3-6.

Defendant Shirley Oliverio did not file a reply.

B. <u>Plaintiffs' and Cross-Claimants' Motion for Partial Summary Judgment</u>

On February 6, 2019, the plaintiffs and the cross-claimants, the Renzelli defendants, filed a motion for partial summary

judgment. ECF No. 64. In support of their motion, they contend that as a matter of law, they are entitled to their breach of contract claims for back rent, expenses (e.g. tax payment), and to attorneys' fee/expense recovery based on the plain language of the Lease Agreement, and the Amendment to the Lease Agreement. ECF No. 65 at 11-13. The plaintiffs and cross-claimants further assert that if the Court is to award them partial summary judgment, Shirley Oliverio should be adjudged to be personally responsible for the satisfaction of the judgment since she personally guaranteed defendant Oliverio's obligations and willingly assumed personal liability. Id. at 13-14. Lastly, the movants contend that they are entitled to summary judgment on their declaratory judgment claim because "the record is clear that the Oliverio's defendants' actions and omissions materially breached the Lease Agreement, rending any purported right of first refusal in the Lease Agreement void and unenforceable as [t]he right to exercise this Right of First Refusal is condition[ed] upon the faithful performance of all the covenants, conditions, and agreements required to be performed by it as Lessee under this Lease Agreement[,]" citing Exhibit 4, Section 5. Id. at 14 (internal quotation marks omitted).

The Oliverio's defendants then filed a response in opposition to plaintiffs' and cross-claimants' joint motion for partial summary judgment. ECF No. 70. In their response, the Oliverio's defendants first argue that the movants' calculation of the amount

of actual rent owed is not correct based upon oral agreements of the parties and their course of conduct or dealing for the past 11 years prior to plaintiffs bringing this civil action. <u>Id.</u> at 3-6. Moreover, the Oliverio's defendants assert that the monthly rental basis for the calculations is incorrect even when considering the rental leases since Michael Renzelli admitted under oath that Oliverio's never exercised any of the written options to renew and that the lessors did not provide written consent; therefore, the Oliverio's defendants have been month-to-month tenants from the expiration of the initial term of the lease. <u>Id.</u> at 6-8. Citing the Lease Agreement, defendants state that under the circumstances, the amount of rent owed is the amount of the immediately preceding monthly installment of rent plus an increase of 20% over such amount. <u>Id.</u> Second, the Oliverio's defendants contend that defendant Shirley Oliverio is not a guarantor for any obligation sought in this civil action since Shirley Oliverio only guaranteed all obligations under the lease for the initial term, and that there was no amendment indicating that she would be a guarantor for any other term. <u>Id.</u> at 9-10. Lastly, defendants assert that there is no genuine issue of material fact as to taxes, since Michael Renzelli previously stated that the Renzelli defendants would pay half of the taxes. <u>Id.</u> at 10. Moreover, "[w]ith regard to the interest alleged to be due and owing, that factor, [defendant contends,] would be dependent upon a consideration of what amount is due and owing; whether the terms of the interest requirements

under the lease are usurious or otherwise void or voidable under the law; and whether any interest applies to any alleged oral agreement beyond the statutory prejudgment interest rate for the last five (5) years - as the claims for taxes beyond [five] years prior the filing would be barred by the applicable statute of limitations." Id. Finally, the Oliverio's defendants assert that an award to plaintiffs for attorneys' fees is not appropriate based on principles of equity. Id. at 10-11.

The plaintiffs and cross-claimants then filed a reply in support of their motion for partial summary judgment. ECF No. 73. In their reply brief, they first address the issue of taxes, interest and attorneys' fees. They allege that: (1) the Oliverio's defendants previously admitted in this civil action that they were to pay, as additional rent, taxes on Green Acres Restaurant property; (2) prior to this civil action, the plaintiffs attempted to correspond with the Oliverio's defendants but such correspondence was returned to plaintiffs' counsel; and (3) equity would dictate an attorneys' fee award to be appropriate. Id. at 2-3. The movants then assert that the Oliverio's defendants' argument that the Lease Agreement was orally modified is contrary to the plain language of the Lease Agreement and the Amendment to the Lease Agreement, specifically stating that the Amendment to the Lease Agreement confirmed that the original Lease Agreement was in full force and effect. Id. at 3-5. The movants then contend that defendants' argument that the Oliverio's defendants have been

month-to-month tenants from the expiration of the initial term of the lease is contrary to the plain language of the Lease Agreement, the Amendment to the Lease Agreement, and case law. Id. at 6. Specifically, the movants assert that the Oliverio's defendants breached the Lease Agreement that placed an obligation on the Oliverio's defendants to provide written notice of renewals, but that such a breach is immaterial since the Lease Agreement expressly contemplates and allows for waiver of conditions by plaintiffs. Id. at 8. Moreover, the movants assert that case law states that a breaching party cannot invoke a contractual provision for their benefit, citing Jones v. Kessler, 98 W. Va. 1, 17 (1925). Id. The movants further state that the Oliverio's defendants' conduct undercuts the proposition that Oliverio's was a month-to-month tenant since they made significant investments in the property. Id. at 8. Lastly, the movants contend that based on the plain language of the Amendment to the Lease Agreement, Shirley Oliverio is jointly and personally responsible for the satisfaction of the judgment. Id. at 9-10.

C.    The Oliverio's Defendants' Motion for Jury Trial

On January 15, 2019, this Court held a status and scheduling conference. At the conference, the Court inquired as to whether or not the defendants have invoked their right to a trial by jury on the breach of contract claim. Counsel for the parties at that time were not certain as to whether or not a party had invoked such a right. Further, counsel for the plaintiffs indicated that they

intend to object to the Oliverio's defendants' request for a trial
by jury, if the defendants seek to do so.  Accordingly, this Court
established a briefing schedule:  Counsel for the defendants were
ordered to file a brief by January 29, 2019.  ECF No. 60 at 11.
Counsel for the plaintiffs were ordered to file a brief in response
by February 12, 2019.  Id. at 12.  The defendants were ordered to
file any reply by February 19, 2019.  Id.

On January 29, 2019, the defendants filed a motion for a jury
trial.  ECF No. 62.  In that motion, the defendants asserted that
there is no prejudice to the parties with respect to the motion,
and that courts have routinely allowed jury trials despite a lack
of a request in an original pleading.  Id. at 2.

On February 1, 2019, the plaintiffs filed a response in
opposition to defendants' motion for a jury trial.  ECF No. 63.  In
their response, plaintiffs asserted that the defendants failed to
comply with Federal Rule of Civil Procedure 38, which sets forth
the requirements for a jury demand, and that in doing so,
defendants have waived their right to a jury trial.  Id. at 4.
Citing Malbon v. Pennsylvania Millers Mut. Ins. Co., 636 F.2d 936,
940 (4th Cir. 1980), the plaintiffs stated that: (1) "the remaining
issue (the issue of damages) is ripe for determination by the Court
- given that the damage calculation in this matter is of a complex
nature, with substantial interests/penalty amounts associated with
the non-payment of contractually owed rent[;]" (2) "the parties
have justifiably relied on the assumption that this case would be

8

tried to the Court throughout motion practice and discovery - such that certain parties have coordinated their trial strategy accordingly[;]" (3) the defendants' motion "was filed approximately fifteen (15) months after the Complaint was filed in this action[;]" and (4) defendants did not offer a meaningful rationale for their failure to make a timely jury demand. Id. at 4-5.

On February 18, 2019, the defendants filed a reply to the plaintiffs' response in opposition to defendants' motion for a jury trial. ECF No. 69. In the reply, the plaintiffs argue that: (1) "the inclusion of the relief found in [Federal Rule of Civil Procedure] 39 and the overriding judicial embrace of the sanctity of jury trials weighs in favor of allowing a jury trial to proceed on factual issues[;]" (2) the plaintiffs are not actually prejudiced by the demand; and (3) defendants did not waive of their defenses. Id. at 1-3.

For the reasons set forth below, defendant Shirley Oliverio's motion for summary judgment (ECF No. 71) is granted, plaintiffs' and cross-claimants' joint motion for partial summary judgment as to the contract claims pending against the Oliverio's defendants, and as to the plaintiffs' request for declaratory relief (ECF No. 64) is granted as framed, and defendants' motion for jury trial (ECF No. 62) is denied.

## II.  Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (explaining that summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the

application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## III. <u>Discussion</u>

### A. <u>Defendant Shirley C. Oliverio's Motion for Summary Judgment</u>

1. <u>Defendant Shirley C. Oliverio is not liable for any obligations and duties under the Lease beyond the initial term</u>

Plaintiffs do not dispute that the initial Lease Agreement indicated that defendant Shirley Oliverio is a guarantor for all obligations and duties under the Lease Agreement for the initial term only and acknowledge that "[t]he plain language of the Lease Agreement provides that the initial term of the lease ended at midnight on December 31, 1998." ECF No. 74 at 3. Plaintiffs argue in their brief in opposition that summary judgment should not be

granted in favor of defendant Shirley Oliverio because: (1) "on February 19, 2007, Shirley C. Oliverio personally guaranteed Oliverio's Catering, Inc.'s obligations, and assumed personal liability for this risk/exposure, when the executed Amendment to Lease Agreement as an unconditional 'GUARANTOR'[,]" and that (2) Shirley Oliverio did not restrict or clarify her status as a guarantor in her response to plaintiff's requests for admission. ECF No. 74 at 4-5. Each argument is considered, and rejected, below.

Although defendant Shirley Oliverio indicates that she is a guarantor without qualification in the Amendment to the Lease Agreement, there is no evidence suggesting that the Amendment to the Lease Agreement amends the guaranty provision in the initial Lease Agreement. On the contrary, paragraph 5 of the Amendment to the Lease Agreement specifically states: "Except as expressly amended by this Amendment to the Lease Agreement, all of the terms and provisions of the Lease Agreement shall continue in full force and effect." ECF No. 70-2 at 4.

Moreover, the cases the plaintiffs have cited in their response do not support the conclusion that defendant Shirley Oliverio is liable past the initial term as set out in the initial Lease Agreement. First, <u>Esso Standard Oil Co. v. Kelly</u>, 145 W. Va. 43, 47 (1960), does not help the plaintiffs because in that case it was clear that the written instrument sued upon was an absolute guaranty. Unlike the circumstances presented in this case, in

Esso, the contract alleged and described an absolute guaranty of payment by the defendant to the plaintiff of a designated and liquidated amount. Id. at 46. If anything, Esso seems to support the conclusion that defendant Shirley Oliverio is not personally liable for any obligations or duties past the initial term set out in the initial Lease Agreement since the case explains that the intention of the guarantor governs. Id. at 47. Here, since the Amendment to the Lease Agreement deals only with changes to subject property, specifically including a portion of the building housing the restaurant which was formerly occupied by Louis Roda and Mary Roda as their residence (see ECF No. 70-2 at 1-4), it is unlikely to assume that defendant Shirley Oliverio intended to guarantee any duties and obligations past the initial term set forth in the Lease Agreement simply because she stated she was a "guarantor" without qualifying terms in the Amendment to the Lease Agreement and in her response to plaintiffs' requests for admission (ECF No. 73-1).

Further, Ives v. Williams, 143 Va. 855 (1925), does not seem to support the conclusion that defendant Shirley Oliverio is liable past the initial term as set out in the Lease Agreement. In Ives, the guaranty was held to be "unquestionably" an absolute guaranty. Id. at 859. The contract in that case provided for a certain, definite, and specific act of performance to be had by the debtor, and the performance of that act was guaranteed without any condition of any character being annexed to it. Id.

Lastly, <u>Looney v. Belcher</u>, 169 Va. 160 (1937), does not seem to support the conclusion that defendant Shirley Oliverio is liable past the initial term as set out in the Lease Agreement. Unlike the circumstances presented in this case, in <u>Looney</u> an issue was whether the guaranty was continuing in nature. <u>Id.</u> Here, the issue is whether the Amendment to the Lease Agreement changed the guaranty provision that had a clear time limit. Again, if anything, <u>Looney</u> would support the conclusion that defendant Shirley Oliverio is not liable for any duties and obligations past the initial term set forth in the Lease Agreement since the court in <u>Looney</u> explains that "[t]he true principle of sound ethics is to give the contract the sense in which the person making the promise believed the other party to have accepted it, in fact, did so understand and accept it." <u>Id.</u> at 172. <u>Looney</u> may support defendant Shirley Oliverio for the same reasons <u>Esso</u> may support defendant Shirley Oliverio.

For the reasons set forth above, the Court grants defendant Shirley Oliverio's motion for summary judgment (ECF Nos. 71 and 72) with respect to defendant Shirley Oliverio's liability past the initial term of the Lease Agreement. Accordingly, plaintiffs' and cross-claimants' joint motion for partial summary judgment, with respect to the issue of whether defendant Shirley Oliverio is a guarantor past the initial term under the Lease Agreement, is denied.

B.  Plaintiffs' and Cross-Claimants' Joint Motion for Partial
Summary Judgment

As indicated by defendants' counsel, defendants concede that they breached the Lease Agreement.[1]  Indeed, the parties agree as to many of the underlying facts, although they disagree as to the amount of damages owed.  The resolution of whether or not plaintiffs and cross-claimants are entitled to judgment as to their breach of contract claims for back rent and expense turns on the legal interpretation of the Lease Agreement.  Because the Lease Agreement is governed by West Virginia law, this Court will begin with a brief review of West Virginia law regarding breach of contract, as well as the provisions in the Lease Agreement that govern the resolution of this dispute.

Under West Virginia law, to state a breach of contract claim, a plaintiff must show: (1) existence of a valid enforceable contract; (2) plaintiff performed under the contract; (3) defendant breached or violated a duty under the contract; and (4) plaintiff was injured by this breach.  Wince v. Easterbrooke Cellular Corp., 681 F. Supp. 2d 688, 693 (N.D. W. Va. 2010); Bettinazzi v. State Farm Fire and Cas. Co., C.A. No. 5:13CV166, 2014 WL 241694, at *2 (N.D. W. Va. Jan. 22, 2014).

---

[1]Defendants' counsel has previously stated, "it's our position that we did breach a contract and we're just pretty much working on figuring out how much we need to pay the plaintiffs.  So we don't really have an argument for the breach of contract claim.  We're just working on getting together with the plaintiffs and everyone and trying to figure out what we need to do to settle it."  ECF No. 64-13 at 13.

In <u>Fraley v. Family Dollar Stores of Marlinton, West Virginia,</u> <u>Inc.</u>, the West Virginia Supreme Court of Appeals reviewed a contract where the plaintiff landlord sought termination of rent due and declared forfeiture of the supermarket's lease. With respect to interpretation of the contract, the Court explained:

> This Court has long held that a valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed. The rule is set forth in Syllabus Point 1, <u>Cotiga Development Co. v. United Fuel Gas Co.</u>, 147 W. Va. 484, 128 S.E.2d 626 (1962), which states: A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.

188 W. Va. 35, 37, 422 S.E.2d 512, 514 (1992). <u>See also</u> Syl. Pt. 9, <u>Arnold v. Palmer</u>, 224 W. Va. 495, 497, 686 S.E.2d 725, 728 (2009) ("A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."); <u>Rollyson v. Jordan</u>, 205 W. Va. 368, 372, 518 S.E.2d 372, 376 (1999) ("Where parties contract lawfully and their contract is free from ambiguity or doubt, their agreement furnishes the law which governs them.").

With this background, this Court turns to consider the provisions of the Lease Agreement regarding defendants' breach.

1. <u>The Oliverio defendants' "oral modification" argument is</u> <u>contrary to the plain language of the Lease Agreement and the</u> <u>Amendment to the Lease Agreement</u>

First, the Oliverio's defendants contend that the Lease Agreement's terms that set forth the rent payments and expense

obligations were modified based upon the parties' oral agreements that occurred sometime in 2006 and their course of conduct for the past 11 years prior to plaintiffs bringing this civil action. It is true that a prior written contract may be modified or supplemented by a subsequent valid oral contract. See <u>Wycokoff v. Painter</u>, 145 W.Va. 310, 315, 115 S.E.2d 80 (1960). However, Section 34(j) of the Lease Agreement provides that: "No modification of this Lease shall be binding unless such modification shall be <u>in writing and signed by the parties</u>." ECF No. 64-4 at 38 (emphasis added). Moreover, Section 29 of the Lease Agreement states:

> No acceptance by Lessors of a lesser sum than the rents and other charges then due shall be deemed to be other than on account of the earliest of such stipulated rents or charges, nor shall any endorsement or statement on any check be deemed an accord and satisfaction, and Lessors may accept such check or payment without prejudice to Lessor's right to recover the balance of such installment or pursue any other remedy provided in the Lease or by law.

ECF No. 64-4 at 34.

The evidence demonstrates that there were no oral agreements after the Lease Agreement that were in writing and signed by the parties. Therefore, this Court finds that the plain language of the Lease Agreement controls, and that there was no oral modification of the terms of the Lease Agreement. This finding is further bolstered by the fact that Section 5 of the Amendment to the Lease Agreement, executed in 2007, after the alleged oral modification, states: "Except as expressly amended by this

Amendment to the Lease Agreement, all of the terms and provisions of the Lease Agreement shall continue in full force and effect." Therefore, the Amendment to the Lease Agreement did not change the rental payments and expense obligations set out in the initial Lease Agreement.

2. <u>Oliverio's is a holdover tenant and did not renew based upon the plain language of the Lease Agreement and West Virginia case law</u>

Defendants also insist that even if the Court determines that no oral agreement was formed subsequent to the Lease Agreement, the monthly rental basis for the calculations are incorrect even when considering the written Leases, since the Oliverio's defendants did not exercise a right to renew. ECF No. 70 at 8.

The Lease Agreement on which the rights of the parties depend states:

> (e) <u>Notice of Exercise of Optional Renewal Terms</u>: The aforesaid options to renew the Lease term must be exercised by the Lessee by giving written notice to the Lessors of its desire to exercise the same at least six (6) months prior to the expiration of the then current lease term.

ECF No. 64-4 at 3. Moreover, the Lease Agreement states:

> 4. <u>HOLDOVER BY LESSEE</u>: If Lessee remains in possession of the Leased Premises or any part thereof after the expiration of the Initial Term or any renewal term of this Lease <u>without the expressed written consent of the Lessors</u>, such occupancy shall be a tenancy from month-to-month at a rental in the amount of the immediately preceding monthly installment of rent plus an increase of twenty-percent (20%) over such amount, and upon all the terms hereof applicable to a month-to-month tenancy. This provision for a holdover rent payment shall in no way be construed as a waiver of the Lessor's rights to evict the Lessee from the Leased Premises.

Id. at 6-7 (emphasis added).

The parties do not dispute that the Oliverio's defendants never exercised this right to renew by providing written notice to the plaintiffs. Moreover, there is no dispute that the plaintiffs did not provide written consent accepting the Oliverio's defendants renewal.

The movants' position is that "the [d]efendants' acts and actual possession of the leased premises, and payment towards funds owed to the [p]laintiffs, automatically triggers the renewal clauses/terms set forth in te Lease Agreement - as does the Oliverio [d]efendants['] affirmation of the renewal terms via execution of the 2007 Amendment to the Lease Agreement." ECF No. 73 at 7. The movants then cite various case law that they argue supports the contention that the Oliverio's defendants renewed under the lease and that the Oliverio's defendants are not month-to-month tenants. Id. at 7-8. Lastly, the movants assert that the Oliverio's defendants breached the Lease Agreement that placed an obligation on the Oliverio's defendants to provide written notice of renewals, but that such a breach is immaterial since the Lease Agreement expressly contemplates and allows for waiver of conditions by plaintiffs.

The Oliverio's defendants assert that they are holdover tenants from the expiration of the Initial Term of the Lease since no option to renew was ever exercised. ECF No. 70 at 8.

This Court is, therefore, left with the question of law: did Oliverio's holding over, paying rent, and investing in the property, without written notice of a desire to renew, operate as a renewal of the Lease under the applicable renewal period?

The decisions on this question are conflicting. However, the West Virginia Supreme Court of Appeals has held in <u>Whalen v. Manley</u>, 68 W. Va. 328, 69 S.E. 843, 844 (1910), that:

> [S]imply holding over after the expiration of a lease containing a bare covenant to renew, and paying rent according to the terms of the old lease, does not amount to an election to renew, but constitutes the tenant, a tenant from month to month or year to year, depending on the terms of the lease as to rent or rental periods. This view is consonant with the general rule that holding over after the expiration of a term of years, or a monthly term, and paying rent according to the terms of the lease, constitutes the tenant a tenant from year to year or month to month as the case may be.

The Supreme Court of Appeals of West Virginia has explained that, "[w]hen the covenant is to <u>renew</u> it is generally regarded that the lease indicates the intention of the parties to execute a new lease, and as requiring of the lessee notice to the lessor at or before the expiration of the lease of his election to renew." <u>Whalen</u>, 69 S.E. at 844. <u>Nach v. Mendrell</u>, 110 W. Va. 139, 157 S.E. 179 (1931), may also be instructive here. In that case, the landlord sought to recover rent under a one-year lease that contained the following covenant: "And it is further agreed by the parties hereto that should the said party of the second part comply with each and every provision herein contained on his part to be complied with, then he shall have the right and option to a further

lease at the expiration of this lease for the further term of Four (4) years, upon the same conditions and for the same rental for which this lease is given." Id. In that case, the lessee remained in possession for 22 months after expiration of the lease with no written notice. Id. The landlord then sought to recover the rent for four years. Id. The Supreme Court of Appeals of West Virginia first explained that, generally, "in construing provisions in a lease where there is uncertainty, the tenant is favored." Id. at 180. The Court then held that "the covenant created a right to a renewal, and contemplated the making of a new lease at the end of the first year." Id. Ultimately, the Court found, citing Whalen, that the fact that the lessee held over past the expiration of the lease and paid rent according to the terms of the old lease does not amount to an election to renew. Id.

Reason, as well as the weight of judicial authority, justifies this Court in holding that the Oliverio's defendants did not elect to renew, but are holdover tenants since the initial term period ended. Specifically, the movants' arguments pertaining to the waiver provision in the Lease Agreement are based on characterizing the Oliverio's defendants failure to exercise their right to renew as a breach of a covenant within the Lease Agreement.[2] However,

_____

[2]The movants specifically cite the following provisions in the Lease Agreement (see ECF No. 73 at 6-7):

The aforesaid options to renew the Lease term must be exercised by the Lessee giving written notice to the Lessors of its desire to exercise the same at least six

the movants fail to adequately explain how the waiver provision operates in conjunction with the holdover provision which expressly addresses the situation at hand - where the lessee remains in possession of the leased premises past the initial term without written consent. Based on a plain reading of the Lease Agreement, this Court finds that the holdover provision applies here. The Oliverio's defendants failed to exercise a right to renew and Oliverio's held over past the initial term. A holding to the contrary would cause the holdover provision to be rendered superfluous and the provision meaningless. Therefore, Oliverio's is a month-to-month tenant and owes "rental in the amount of the immediately preceding monthly installment of rent plus an increase of twenty percent (20%) over such amount, and upon all the terms hereof applicable to a month-to-month tenancy." ECF No. 64-4 at 7. The other cases the movants cite in their reply brief (ECF No. 73 at 7-8) may be distinguished from the facts at hand.

------

(6) months prior to the expiration of the current lease term.

ECF No. 70-1 at 4.

Section 28. Waiver. One or more waivers of any covenant or condition by Lessors shall not be construed as a waiver of a subsequent breach of the same or any other covenant or condition, and the consent or approval by Lessors to or of any act by Lessee requiring Lessors' consent or approval shall not be construed to waive or render unnecessary Lessors' consent or approval to or of any subsequent similar act by Lessee.

ECF No. 70-1 at 33.

This judgment renders it unnecessary to respond to any other questions argued in the briefs.

The parties are ORDERED to meet and confer as to damages, consistent with this Court's finding that Oliverio's is a holdover tenant, and that the holdover provision (specifically, <u>see</u> Section 4 of the Lease Agreement) applies. The parties are ORDERED to consider whether other clauses in the Lease Agreement apply, including, but not limited to the provision addressing late penalties (<u>see</u> Section 3 of the Lease Agreement). If the parties do not come to an agreement as to the amount of damages due, the parties are ORDERED to submit simultaneous briefing on such issues ten (10) days after the parties have attempted to come to agreement. The Court may decide the issue based on the memoranda submitted to this Court, or may schedule an evidentiary hearing pertaining to such issues.

3. <u>Plaintiffs and cross-claimants are entitled to taxes, interest, and attorneys' fees</u>

a. <u>Taxes and interest</u>

Section 6 sets out the Oliverio defendants' obligations for taxes and other assessments. Section 6 provides, in pertinent part, as follows:

(a) Commencing with the taxable year 1996, with all taxes to be calculated on a calendar year basis, Lessee shall pay as additional rent for the Leased Premises, all taxes and assessments, general and special, utility rates and all other impositions, ordinary and extraordinary, of every kind and nature whatsoever, which may be levied, assessed or imposed upon the Leased Premises or any part thereof, or upon any improvements at any time situated

23

thereon, accruing or becoming due and payable during the term of this Lease . . .

(b) Lessee shall make direct payment to the taxing authorities and shall deliver to Lessors duplicate receipts or photostatic copies thereof showing the payment of all said taxes, assessments, and other impositions within thirty (30) days after the respective payments evidenced thereby. Lessors shall, at Lessors' option, have the right to pay any such tazes, assessments, or other charges or impositions not paid by Lessee, and the amounts so paid, including reasonable expenses, shall be so much additional rent due on the first day of the month after any such payments, with interest at the rate of one and one-half percent (1-1/2%) per month, or the highest rate permitted by law, from the date of Lessors' payment thereof to the date of reimbursement by Lessee.

ECF No. 64-4 at 8-9. Moreover, the Amendment to the Lease Agreement states:

2. Section 6 of the Lease Agreement, entitled "Taxes and Other Assessments," in subsection (a) thereof, is hereby amended to delete the following sentence:

The parties hereto understand and agree that the residential unit now occupied by Mary Roda and Louis Roda in the building housing the Restaurant is separately assessed for real estate tax purposes, and Lessee shall not be required to pay the real estate taxes levied thereon.

3. As consideration for the inclusion of the residential portion of the building housing the Restaurant which was formerly occupied by Louis Roda and Mary Roda as their residence within the definition of 'Leased Premises', the Lessee agrees to pay, as additional rent for the Leased Premises, the real estate taxes assessed upon the aforesaid residential unit as said real estate taxes become due and payable during the term of the Lease Agreement. The payment of said real estate taxes shall be governed by Section 6 of the Lease Agreement. The obligation of the Lessee to pay said real estate taxes upon said residential unit shall commence with the taxes for the calendar year 2007 . . .

This Court finds that the Oliverio's defendants breached the contract with respect to paying taxes on the leased property. The Oliverio's defendants admit that they were to pay taxes in their responses to requests for admission. ECF No. 73-1 at 5.

However, since the record demonstrates that a portion of the taxes may have been paid and as defendants correctly noted there are numerous factors in determining the interest due and owing (see ECF No. 73 at 10), the parties are ORDERED to meet and confer as those amounts. If the parties do not come to an agreement as to the amount due, the parties are ORDERED to submit simultaneous briefing on such issues ten (10) days after the parties have attempted to come to agreement. The Court may decide the issue based on the memoranda submitted to this Court, or may schedule an evidentiary hearing pertaining to such issues.

b. Attorneys' Fees

Finally, the movants also seek to recover attorneys' fees incurred in pursuing the Oliverio's defendants' obligations under the contract, including the costs of this litigation. The movants assert that they are entitled to attorneys' fees and costs under the language in the Lease Agreement that states:

> In addition to any other remedies Lessors may have at law or equity and/or under this Lease, Lessee shall pay upon demand all Lessors' cost, charges and expenses, including fees of counsel, agents and others retained by Lessors, incurred in connection with the recovery of sums due under this Lease, or because of the breach of any covenant under this Lease or for any other relief against Lessee. In the event Lessee shall bring any action against Lessors for relief hereunder and Lessors shall

prevail, Lessee shall pay Lessors' reasonable attorneys' fees and all other court costs.

ECF No. 64-4 at 27-28.  The Oliverio's defendants dispute that movants are entitled to attorneys' fees under the Lease Agreement.

Under West Virginia law, generally, "each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Sally-Mike Prop. v. Yokum, 179 W. Va. 48, 365 S.E.2d 246, 248 (W. Va. 1986).  In Moore v. Johnson Service Co., 158 W. Va. 808, 820, 219 S.E.2d 315, 323 (W. Va. 1975), the Supreme Court of Appeals of West Virginia ruled that where a lease agreement contained a clause that allowed reasonable attorneys' fees in the event that either party successfully enforced an action for breach of provisions of the lease, the party bringing the action is entitled to recover for reasonable attorneys' fees upon judgment by the trial court that there was a breach of the lease agreement.  In Moore, the lease provided that "the successful party in an action to enforce the lease or to recover for a breach of the lease should recover from the unsuccessful party, in addition to other appropriate relief, the reasonable expense and attorneys' fees as part of the judgment."  Id. at 818 (internal quotation marks omitted).

The language at issue specifically provided for the payment of fees and costs associated with claims and litigation.  This language is explicit.  The provision cited by the movants states that "[i]n the event Lessee shall bring any action against Lessors for relief hereunder and Lessee shall prevail, Lessee shall pay

26

Lessors' reasonable attorneys' fees and all court costs." Although the Oliverio's defendants argue that the movants are not entitled to attorneys' fees because there was never any demand prior to suit and the Lease Agreement states that "Lessee shall pay upon demand all Lessor's costs, expenses, including fees of counsel, etc.[,]" the Lease Agreement never specified that such a demand must occur prior to initiation of a lawsuit.  Rather, reading the provision as a whole, in its plain terms, the Lease Agreement seems to have contemplated that such fees and costs would be awarded if a demand was even made in a lawsuit, after a court found that the lessees breached a contract within the Lease Agreement.

This Court concludes that the Lease Agreement between the movants and the Oliverio's defendants unambiguously provides for the recovery of attorneys' fees and costs.  Accordingly, a reasonableness hearing shall be held, consistent with the factors set forth in Aetna Cas. & Surety Co. v. Pitrolo[3] on **May 22, 2019 at 3:00 p.m. in the South Courtroom, Second Floor, Federal Building, 1125 Chapline Street, Wheeling, West Virginia 26003**.

The parties shall file their briefs regarding the amount of attorneys' fees owed, simultaneously, on **May 6, 2019**.

4.  Plaintiffs are entitled to summary judgment on their declaratory judgment claim

Lastly, movants seek summary judgment on plaintiffs' declaratory judgment claim.  This claim seeks a declaration "that

---

[3]176 W. Va. 190, 196, 342 S.E.2d 156, 162 (1986).

Oliverio's right of first refusal is void due to its material and intentional breaches of the Lease Agreement." ECF No. 17 at 12.

"District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." A.Hak Indus. Services BV v. TechCorr USA, LLC, C.A. No. 3:11-CV-74, 2014 WL 7243191, *27 (N.D. W. Va. Dec. 19, 2014) (citing Wilton v. Seven Falls Co., 515 U.S. 277, 282, 115 S. Ct. 2137, 132 L.Ed.2d 214 (1995)). With respect to declaratory judgment actions, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Id. (citing Wilton, 515 U.S. at 288).

The United States Court of Appeals for the Fourth Circuit has held that a district court may exercise its discretion and decline to entertain jurisdiction with "good reason." Volvo Const. Equipment North America, Inc. v. CLM Equipment Company, Inc., 386 F.3d 581, 594 (4th Cir. 2004). "The two principle criteria guiding the policy in favor of rending declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937) (citing Borchard, Declaratory Judgments 107-109).

"Moreover, it is proper to dismiss a declaratory claim that is duplicative in that it seeks no relief that is not implictly sought in the other causes of action." <u>A.Hak Indus. Services BV v. TechCorr USA, LLC</u>, C.A. No. 3:11-CV-74, 2014 WL 7243191, *27 (N.D. W. Va. Dec. 19, 2014) (citing <u>Sofi Classic S.A. de C.V. v. Hurowitz</u>, 444 F. Supp. 2d 231, 249 (S.D. N.Y. 2006). "[A] declaratory judgment serves no useful purpose when it seeks only to adjudicate an already-existing breach of contract claim." <u>Id.</u> (citing <u>Metra Industries, Inc. v. Rivanna Water & Sewer Authority</u>, C.A. No. 3:12CV00049, 2014 WL 652253, *2 (W.D. Va. 2014) (internal quotation marks omitted).

It is correctly noted in the movants' reply to the Oliverio's defendants' response in opposition to the motion to partially dismiss (ECF No. 73), that the issue as to the Oliverio's defendants' right of first refusal is uncontested by the Oliverio's defendants. ECF No. 73 at 10. This Court grants summary judgment in movants' favor on the declaratory judgment claim. However, declaring the right of first of first refusal invalid or unenforceable does not imply that this Court finds that the provision is unconscionable, inequitable, or otherwise unenforceable on its face. Specifically, the Court does not find that the right of first refusal is unconscionable, inequitable, or unlawful. This Court merely holds that under the facts presented in this case, the lessees have failed to exercise their right of

first refusal in accordance to Section 5 of the Lease Agreement.
See ECF No. 64-4 at 7-8.

C.  The Oliverio's defendants' are not entitled to a jury trial on the issue of damages

The Federal Rules of Civil Procedure set forth the requirements for a jury demand in federal court.  Rule 38 states in pertinent part:

> (b)  Demand.  On any issue triable of right by a jury, a party may demand a jury trial by:
>
> > (1)  serving the other parties with a written demand – which may be included in a pleading – no later than 14 days after the last pleading directed to the issue is served;
> >
> > (2)  filing the demand in accordance with Rule 5(d).
>
> . . .
>
> (d)  Waiver; Withdrawal.  A party waives a jury trial unless its demand is properly served and filed.  A proper demand may be withdrawn only if the parties consent.

Fed. R. Civ. P. 38(b), (d).

Rule 39(b) further states that "[i]ssues on which a jury trial is not properly demanded are to be tried by the court.  But the court, on motion, order a jury trial on any issue for which a jury might have been demanded."  Fed. R. Civ. P. 39(b).

Resolution of a Rule 39(b) motion is "committed to the discretion of the trial court."  Malbon v. Pennsylvania Millers Mut. Ins. Co., 636 F.2d 936, 940 (4th Cir. 1980).  In deciding whether to grant a Rule 39(b) motion, courts may be guided by the following four factors:

> (1) whether the issues are more appropriate for
> determination by a jury or a judge (i.e. factual versus
> legal, legal versus equitable, simple versus complex);
> (2) any prejudice that granting a jury trial would cause
> the opposing party; (3) the timing of the motion (early
> or late in the proceedings); and (4) any effect a jury
> trial would have on the court's docket and the orderly
> administration of justice.

Id. at 940 n.11 (internal quotation marks omitted).

A number of courts have also considered a fifth factor - the reason for the failure to make a timely jury demand. See Farias v. Bexar County Bd. of Trustees for Mental Health Retardation Services, 925 F.2d 866, 873 (5th Cir. 1991), cert denied, 502 U.S. 866 (1991); Kitchen v. Chippewa Valley Sch., 825 F.2d 1004, 1012-13 (6th Cir. 1987); Mardesich v. Marciel, 538 F.2d 848, 849 (9th Cir. 1976). The Supreme Court of the United States has also noted, in dicta, that a district court's discretion generally is guided by "the justifiability of the tardy litigant's delay and the absence of prejudice to his adversary." Pierce v. Underwood, 487 U.S. 552, 562 (1988).

In support of their motion to confirm a non-jury trial, the plaintiffs argue that the defendants did not make a proper jury demand pursuant to Rule 38(b). In response, the defendants, among other things, point to "inclusion of the relief found in [Federal Rule of Civil Procedure] 39." ECF No. 69 at 2. Specifically, the defendants cite to the language in Rule 39(b) that states that "the court may, on motion, order a jury trial on any issue for which a jury trial may be demanded." ECF No. 62-1 at 2. Moreover, according to the defendants, the plaintiffs are not actually

prejudiced by the demand and the defendants did not waive their defenses. ECF No. 69 at 1-3.

Applying the <u>Malbon</u> factors to this action, this Court concludes that the defendants' motion for a jury trial must be denied. As to the first factor, whether the issues are more appropriately determined by a jury, this Court observes that to determine the amount of damages the movants are entitled to, the factfinder will be required to consider various documents and legal briefs to come to a correct calculation, determining various potential legal questions along with the factual circumstances. The factfinder must also analyze the documents and deduct amounts that have allegedly been paid prior to or during initiation of this civil action. Because the parties have indicated that their understanding of the amounts owed in connection with this civil action are opposed, this Court finds that issues of damages in this civil action are sufficiently complex to probably warrant a non-jury trial. The Court believes that it is better suited, rather than a jury, to ultimately construe the relevant provisions in the Lease Agreement and the Amendment to the Lease Agreement, and calculate damages based on those provisions. Therefore, this factor weighs against granting the motion.

The second factor, whether the plaintiff will be prejudiced by granting a jury trial, also counsels against granting the motion. This Court finds that the plaintiffs have justifiably relied on the assumption that the case would be tried to the Court throughout the

motion practice and discovery, and that the plaintiffs have prepared and coordinated trial strategy accordingly. Therefore, this factor weighs against granting the motion.

The third factor identified by <u>Malbon</u> is the timing of the motion for a jury trial. Here, the motion was made very late in the proceedings, after realizing a jury demand was never made at a status and scheduling conference held in January 15, 2019. The defendants never submitted a supplemental filing prior to their motion for a jury trial, indicating that they sought a trial by jury. Therefore, this factor weighs against granting the motion.

Under the fourth factor of the <u>Malbon</u> analysis, this Court finds that there would be little, if any, effect that a jury trial would have on this Court's docket and the orderly administration of justice. This factor, therefore, does not appear to weigh in favor of or against granting the motion.

Considering the additional factor which other courts have considered, the reason for the failure to make a timely jury demand, this Court notes that defendants candidly indicate that "the only explanation the undersigned can present is human error." ECF No. 62-1 at 4. The reason for the defendants' long delay in requesting a jury trial does not appear to this Court to justify granting a jury trial at this late stage of the proceedings.

Because three of the four <u>Malbon</u> factors weigh against granting the motion for a jury trial, and the fourth factor is neutral, and because the defendants have not offered a persuasive

reason justifying the long delay in their request for a jury trial, this Court concludes that the defendants' motion for a jury trial must be denied. Central to this issue, this Court believes that at this stage in the litigation, the Court will more efficiently construe the relevant provisions in the Lease Agreement and the Amendment to the Lease Agreement, and to calculate damages in accordance with such provisions.

## IV. <u>Conclusion</u>

For the reasons set forth above, defendant Shirley C. Oliverio's motion for summary judgment (ECF No. 71) is GRANTED, plaintiffs' and cross-claimants' joint motion for partial summary judgment as to the contract claims pending against the Oliverio's defendants, and as to the plaintiffs' request for declaratory relief (ECF No. 64) is GRANTED AS FRAMED, and the defendants' motion for jury trial (ECF No. 62) is DENIED.

Moreover, as previously stated, a reasonableness hearing shall be held, consistent with <u>Aetna Cas. & Surety Co. v. Pitrolo</u>, on **<u>May 22, 2019 at 3:00 p.m. in the South Courtroom, Second Floor, Federal Building, 1125 Chapline Street, Wheeling, West Virginia 26003</u>**.

The parties shall file briefs regarding the amount of attorneys' fees owed by **May 6, 2019**.

Further, and as also mentioned above, the parties are ORDERED to meet and confer as to <u>total</u> damages, including taxes and interest, consistent with this Court's finding that Oliverio's is

34

a holdover tenant, and that the holdover provision (specifically, <u>see</u> Section 4 of the Lease Agreement) applies. The parties are ORDERED to consider whether other clauses in the Lease Agreement apply, including, but not limited to the provision addressing late penalties (<u>see</u> Section 3 of the Lease Agreement). If the parties do not come to an agreement as to the amount of <u>total</u> damages due, the parties are ORDERED to submit simultaneous briefing on such issues ten (10) days after the parties have attempted to come to agreement. The Court may decide the issue based on the memoranda submitted to this Court, or may schedule an evidentiary hearing pertaining to such issues.

Lastly, the pretrial conference that is scheduled on Monday, April 29, 2019 is hereby VACATED. The trial that is scheduled to commence on Tuesday, May 21, 2019 is also hereby VACATED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    April 24, 2019


                          /s/ Frederick P. Stamp, Jr.
                          FREDERICK P. STAMP, JR.
                          UNITED STATES DISTRICT JUDGE